Garber Immunity Petition.

In Re: Petition of Attorney General For Grant of Immunity and Order To Testify to Garber.

Heard February 17, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., and WILKINSON, JR., sitting as a panel of three.

*Edward J. Morris,* with him *Morris & Victor,* for respondents.

*Alan L. Adelstein,* with him *Russell M. Coombs,* for petitioner.

OPINION BY JUDGE CRUMLISH, JR., May 24, 1972:

This case, which is before us on original jurisdiction,[1] calls for the resolution of a petition by the Attorney General in which he seeks an order granting immunity to a reluctant witness before the Pennsylvania Crime Commission. If allowed, he would be ordered to testify or suffer the legally prescribed consequences. Respondent has filed preliminary objections to this petition alleging that this Court is without jurisdiction because the matter is essentially a criminal proceeding.

Respondent had appeared as a witness and refused to testify before the Pennsylvania Crime Commission at a hearing held in connection with the Commission's investigation into alleged organized crime and corruption within the Philadelphia Police Department. He asserted his privilege against self-incrimination.

Petitioner subsequently filed the instant petition for a grant of immunity under Act of November 22, 1968, P. L.     , No. 333, §§1-3, 19 P.S. §§640.1-640.3. Sections 1 through 3 of the Act provide that in a proceeding relating to organized crime or racketeering before an investigative body such as this, a person who refuses to testify on self-incrimination grounds may be ordered to testify upon a showing, by the attorney general, of a need for a grant of immunity; that the attorney general may petition for an order requiring the person to testify upon a showing of need; and that the witness shall be immune if the evidence would be the basis for prosecution.

Section 5 of the Act provides: "Any person who shall refuse or decline to testify or produce evidence of any other kind after being granted immunity and ordered by the court, shall be guilty of criminal contempt, and upon conviction thereof, shall be sentenced to pay a fine of not exceeding one thousand dollars ($1,000),

---

[1] Act of July 31, 1970, P. L. 673, Art. IV, §401, 17 P.S. §211.401.

or to undergo imprisonment for a period not exceeding one year, or both."

Respondent contends that because this provision of the statute provides for "criminal contempt" upon a failure to testify after the grant of immunity, this Court is without jurisdiction in this and other immunity proceedings brought by the Crime Commission. We disagree.

The jurisdiction of this Court over the proceedings of the Crime Commission has been firmly established. *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, A. 2d     (1971), affirming 2 Pa. Commonwealth Ct. 650 (1971). As stated by President Judge BOWMAN, in 2 Pa. Commonwealth Ct. 650, 655 (1971), ". . . the legislative intent to confer upon the Commonwealth Court concurrent original jurisdiction over the subject matter of these proceedings is clear and unambiguous."

Once it is determined that a court has jurisdiction over a proceeding, that court must be able to enforce any orders that are made by it. As stated in *Riccobene Appeal,* 439 Pa. 404, 422-23, 268 A. 2d 104 (1970), *"There can be no question that courts have inherent power* to enforce compliance with their lawful orders *through civil contempt.* United States v. United Mine Workers, 330 U.S. 258, 330-332 (1947) (BLACK and DOUGLAS, JJ., concurring in part and dissenting in part); United States v. Barnett, 376 U.S. 681, 753-754 (1964) (GOLDBERG, J., dissenting). *And it is essential that courts be able to compel the appearance and testimony of witnesses.* United States v. Bryan, 339 U.S. 323, 331 (1950)." (Emphasis in original.)

In *Riccobene, supra,* a citation for civil contempt under the same statute as is in question in the instant case was held to be within the inherent power of the court. Criminal contempt, as provided by the statute, is not the exclusive remedy available to this Court to enforce its orders. Civil contempt also lies.

That the statute provides for a criminal contempt remedy when a witness fails to testify does not transform the matter into a criminal proceeding. Criminal contempt is an affront to the dignity and authority of the court and in such instances a court necessarily has the power to punish such conduct in order to protect its integrity. *Commonwealth v. Harris*, 409 Pa. 163, 170, 185 A. 2d 586 (1962). *See also In re Aungst*, 411 Pa. 595, 192 A. 2d 723 (1963); *Schlesinger v. Musmanno*, 367 Pa. 476, 81 A. 2d 316 (1951). The power to punish for such indignities by the imposition of a criminal contempt order does not, however, change the nature of the proceeding.

Criminal contempt may arise in either a criminal or civil action. It could not seriously be contended that outrageous conduct in any purely civil action could not be punished by criminal contempt. No matter what the caption of the proceeding, outrageous conduct is still an offense against organized society and the judicial structure in particular and is subject to a criminal contempt penalty. Our power to punish for criminal contempt does not change the proceeding before us from civil to criminal, nor does it withdraw this case from the parameters of our jurisdiction.

We hold that our ability to impose criminal contempt citations does not withdraw this proceeding from the jurisdiction of this Court. Accordingly, we issue the following

### ORDER

AND NOW, this 24th day of May, 1972, the preliminary objections of respondent, Michael J. Garber, are hereby dismissed.